Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Amy J. St. Eve | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 00 C 2504 | DATE | 2/3/2003 |
| CASE TITLE | | Moberg vs. City of West Chicago | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendant West Chicago's Motion for Summary Judgment (R. 85-1) and the Individual Defendant's Motion for Summary Judgment (R.81-1) are both granted. Jury Trial set for 2/10/03 is stricken. Any pending dates are stricken. Any pending motions are moot.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | Document Number |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | FEB 0 4 2003 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | G-1 docketing deputy initials | 110 |
| ✓ | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | | |
| TH ✓ | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice / mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| RICHARD and LAURA MOBERG, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 00 C 2504 |
| | ) | |
| CITY OF WEST CHICAGO, an Illinois | ) | |
| Municipal Corporation, MICHAEL | ) | |
| GUTTMAN, individually, JOANNE | ) | |
| GUGLIOTTA, individually, MICHAEL | ) | |
| BAKER, individually and SCOTT | ) | |
| MARQUARDT, individually, | ) | |
| | ) | |
| Defendants. | ) | |

DOCKETED
FEB 0 4 2003

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Judge

Defendant City of West Chicago ("West Chicago") has moved for summary judgment, and Defendants Michael Guttman, Joanne Gugliotta, Michael Baker and Scott Marquardt (collectively, "the Individual Defendants") have also moved for summary judgment. For the reasons discussed below, both motions for summary judgment are granted.

## LEGAL STANDARD

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of triable fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Pugh v. City of*

\116

*Attica*, 259 F.3d 619, 625 (7th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)).

The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The party that bears the burden of proof on a particular issue, however, may not rest on its pleadings but must affirmatively demonstrate that there is a genuine issue of material fact. *Id.* at 324, 106 S.Ct. at 2553. A mere scintilla of evidence in support of the non-movant's position is insufficient. *See Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512. A party will be successful in opposing summary judgment only if it presents "definite, competent evidence to rebut the motion." *EEOC v. Roebuck & Co.*, 233 F.3d 432, 437 (7th Cir. 2000).

The Court "considers the evidentiary record in the light most favorable to the non-moving party, and draws all reasonable inferences in his favor." *Lesch v. Crown Cork & Seal Co.*, 282 F.3d 467, 471 (7th Cir. 2002). The Court accepts the non-moving party's version of any disputed facts but only if it is supported by relevant, admissible evidence. *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir. 1996).

## FACTUAL BACKGROUND

### A. Plaintiffs' Acquisition of the Subject Property

In February of 1997, Plaintiffs Richard and Laura Moberg purchased property located at 227 West Grandlake Boulevard in West Chicago, Illinois ("the subject property"). (*See* R. 99-1, Pls.' L.R. 56.1(b)(3) Resp. to West Chicago, ¶¶ 9-10.) The subject property is approximately 1.7

acres and abuts a wetlands area. (*See* R. 98-1, Pls.' L.R. 56.1(b)(3) Resp. to Ind. Defs., ¶ 9.) Plaintiffs purchased the subject property at a sheriff's sale "as is" without conducting any survey or engineering inspection. (*Id.*, ¶ 1.)

### B. Applicable Zoning Restrictions

West Chicago has a comprehensive zoning ordinance that regulates the use and development of property. (*See* R. 98-1, Pls.' L.R. 56.1(b)(3) Resp. to Ind. Defs., ¶ 11.) Under the zoning ordinance, property owners must apply for an occupancy permit for any new use of property. (*See* R. 84-1, Ind. Defs.' L.R. 56.1(a)(3) Statement, Ex. E at Article V and § 5.2-1.) The zoning ordinance provides that no occupancy permit will issue unless the property complies with all of the requirements under the zoning ordinance. (*Id.*)

There are a number of specific requirements under the zoning ordinance that apply to the subject property and are relevant to this action. *First*, under the zoning ordinance, all areas used as driveways or for parking at the subject property are supposed to be paved. (*See* R. 98-1, Pls.' L.R. 56.1(b)(3) Resp. to Ind. Defs., ¶ 23.)[1]

*Second*, outside storage is not authorized in the district where the subject property resides without a special use permit. (*See* R. 99-1, Pls.' L.R. 56.1(b)(3) Resp. to West Chicago, ¶¶ 47-51. *See also* R. 85-1, Def. West Chicago's L.R. 56.1(a)(3) Statement, Ex. Q.)

---

[1] The Individual Defendants lay out the various applicable zoning requirements in their L.R. 56.1(a)(3) statement and attach the relevant excerpts as exhibits. Plaintiffs object to the Individual Defendants' reference to these materials in their L.R. 56.1(a)(3) statement, arguing that the zoning requirements raise "legal issue[s]." *See, e.g.*, R. 98-1, Pls.' L.R. 56.1(b)(3) Resp. to Ind. Defs. ¶ 13.) The applicability of these zoning requirements, however, is plain. Indeed, it appears that Plaintiffs do not dispute the applicability of most of these zoning restrictions to the subject property. (*See, e.g.*, R. 99-1, Pls.' L.R. 56.1(b)(3) Resp. to West Chicago ¶¶ 47-51.)

*Third*, because it includes a wetlands buffer zone, the subject property must comply with the DuPage County Countywide Stormwater and Floodplain Ordinance ("the Stormwater and Floodplain ordinance"), which the West Chicago zoning ordinance incorporates by reference. (*See* R. 98-1, Pls.' L.R. 56.1(b)(3) Resp. to Ind. Defs., ¶ 29; R. 84-1, Ind. Defs.' L.R. 56.1(a)(3) Statement, Ex. B at p. 23.)

### C. Permit History for the Subject Property

After they purchased the subject property, Plaintiffs leased it to Channel Communications. (*See* R. 99-1, Pls.' L.R. 56.1(b)(3) Resp. to West Chicago, ¶ 29.) West Chicago inspected the subject property in June of 1997, and after corrections to cure various violations, West Chicago issued a certificate of compliance. (*Id.*, ¶¶ 26-27.) Although it is clear that no special use permit was issued, it appears that Channel Communications may have used the subject property for outside storage. (*See* R. 98-1, Pls.' L.R. 56.1(b)(3) Resp. to Ind. Defs., ¶ 40.)

In 1998, Plaintiffs leased the subject property to Fioderosa Construction Company. (*See* R. 98-1, Pls.' L.R. 56.1(b)(3) Resp. to Ind. Defs., ¶ 41.) Fioderosa Construction used the subject property for outside storage without an occupancy permit or a special use permit. (*See* R. 99-1, Pls.' L.R. 56.1(b)(3) Resp. to West Chicago, ¶ 30.) At some point, Fioderosa Construction expressed interest in purchasing the subject property from Plaintiffs, and it contacted West Chicago and Plaintiffs to ensure compliance with applicable zoning and occupancy regulations. (*See* R. 98-1, Pls.' L.R. 56.1(b)(3) Resp. to Ind. Defs., ¶ 43.)

In connection with its investigation of zoning and permits issues, Fioderosa Construction learned of a wetlands issue with the subject property. At some point, fill had been dumped in the

wetlands buffer zone.[2] Remediation of the buffer zone would have required removal of the fill or landscaping. (*See* R. 84-1, Ind. Defs.' L.R. 56.1(a)(3) Statement, Ex. B at p. 24, 38-39, 60.) The wetlands issue prompted Fioderosa Construction to abandon the idea of purchasing the subject property. (*See* R. 98-1, Pls.' L.R. 56.1(b)(3) Resp. to Ind. Defs., ¶ 48.) Ultimately, Fioderosa Construction vacated the subject property prior to the expiration of its lease in July of 1999. (*See* R. 99-1, Pls.' L.R. 56.1(b)(3) Resp. to West Chicago, ¶ 31.)

In October 1999, representatives of Plaintiffs, West Chicago, and DuPage County met to discuss the wetlands issue. (*See* R. 98-1, Pls.' L.R. 56.1(b)(3) Resp. to Ind. Defs., ¶ 62.) It is unclear whether Plaintiffs were informed at that meeting that removal of the fill or landscaping might be required to resolve the wetlands issue. Plaintiffs maintain that these options were not discussed until March of 2002. (*Id.*, ¶ 62.) Regardless, West Chicago made clear that it would not issue an occupancy permit until Plaintiffs resolved the wetlands and other issues with the subject property.

In late 1999 and early 2000, Plaintiffs attempted to negotiate a lease with Fast Track Towing (*see* R. 98-1, Pls.' L.R. 56.1(b)(3) Resp. to Ind. Defs., ¶ 51), and Fast Track Towing applied for an occupancy permit. On February 28, 2000, West Chicago denied that application,

---

[2] The source of the fill impacting the wetlands buffer zone is disputed. The parties agree that sometime during the mid-1980's West Chicago dumped fill on the subject property (with the consent of the owner at the time). (*See* R. 99-1, Pls.' L.R. 56.1(b)(3) Resp. to West Chicago, ¶ 15; R. 84-1, Ind. Defs.' L.R. 56.1(a)(3) Statement, Ex. B at p. 23.) Defendants suggest, however, that someone else dumped fill on the subject property in the early- or mid-1990's, and that this second fill dumping actually triggered the need for remediation. (*See* R. 103-1, West Chicago's Reply in Support of Mot. for Summ. J., p. 6-8.) Regardless, as discussed below, the Court believes that the source of the fill is a red herring because there were other reasons for the denial of an occupancy permit for the subject property.

5

citing, among other things, (1) the requirement that driveways and parking spots be paved; (2) the need for a special use permit to cover outside storage; (3) and the wetlands issue. (*See* R. 84-1, Ind. Defs.' L.R. 56.1(a)(3) Statement, Ex. J.)

In March of 2000, Plaintiffs themselves applied for an occupancy permit. (*See* R. 99-1, Pls.' L.R. 56.1(b)(3) Resp. to West Chicago, ¶ 40.) On March 8, 2000, however, West Chicago denied this application, again citing, among other things, (1) the requirement that driveways and parking spots be paved; and (2) the wetlands issue. (*Id.*, ¶ 41. *See also* R. 84-1, Ind. Defs.' L.R. 56.1(a)(3) Statement, Ex. K.)

Plaintiffs objected to the denial of an occupancy permit, claiming that West Chicago was itself the source of the fill impacting the wetlands buffer zone. (*See* R. 85-1, Def. West Chicago's L.R. 56.1(a)(3) Statement, Ex. V.) On May 1, 2000, West Chicago responded that it had not been able to confirm that the City was the source of the fill. (*Id.*) West Chicago suggested, however, that the fill might not have to be removed if Plaintiffs did not undertake any work in the buffer zone. (*Id.*) West Chicago stressed to Plaintiffs, however, that DuPage County was the "final arbiter" on these issues. (*Id.*) Moreover, West Chicago noted that regardless of the outcome of the wetlands issue, it would not issue an occupancy permit unless the driveways and parking areas at the subject property were paved. (*Id.*)

On or about February 11, 2002, Pirtano Construction applied for an occupancy permit for the subject property. (*See* R. 99-1, Pls.' L.R. 56.1(b)(3) Resp. to West Chicago, ¶ 42.) West Chicago denied that application, citing (1) the requirement that driveways and parking spots be paved; and (2) the need for a special use permit to cover outside storage. (*See* R. 85-1, Def. West

Chicago's L.R. 56.1(a)(3) Statement, Ex. O.)[3] Pirtano Construction still occupies the subject property today, despite the continued lack of an occupancy permit from West Chicago.

### D. Procedural History

After extensive discussions failed to resolve the permit issues, Plaintiffs sued West Chicago and the Individual Defendants on April 26, 2000. (*See* R. 1-1, Pls.' Compl.) Plaintiffs contend that Defendants willfully imposed arbitrary and capricious requirements on Plaintiffs in connection with the occupancy of Plaintiffs' West Chicago property. Plaintiffs further contend that Defendants disregarded Plaintiffs constitutional rights and caused them to suffer significant monetary damages.

Plaintiffs have asserted the following claims against West Chicago: (1) violation of the Equal Protection Clause; (2) deprivation of constitutional rights under 42 U.S.C. § 1983; and (3) the *Monell* doctrine. In addition, Plaintiffs have asserted a claim for willful and wanton conduct against the Individual Defendants, each of whom were involved (in some way) with the denial of an occupancy permit for the subject property.

---

[3] West Chicago's L.R. 56.1(a)(3) statement suggests that it *approved* Pirtano Construction's application for an occupancy permit. (*See* R. 85-1, Def. West Chicago's L.R. 56.1(a)(3) Statement, ¶ 43.) Plaintiffs deny this assertion, which they point out is contradicted by the statement of uncontested facts contained in the joint proposed pre-trial order signed by West Chicago's counsel (but not yet entered by the Court). (*See* R. 99-1, Pls.' L.R. 56.1(b)(3) Resp. to West Chicago, ¶ 43.) Although Plaintiffs cite to the wrong paragraph of the proposed pre-trial order, they are correct that West Chicago's acquiescence to this uncontested fact is a judicial admission that cannot be gainsaid at this stage. *See Spina v. Forest Preserve of Cook County*, No. 98 C 1393, 2001 WL 1491524, *10 (N.D. Ill. Nov. 23, 2001) (a party's agreement in pre-trial order with proposed uncontested fact constitutes binding judicial admission). The Court notes, however, that West Chicago's claim that it approved this latest application is not well supported by the record. Indeed, the document West Chicago purports to cite for this proposition actually shows that it Chicago *denied* Pirtano Construction's application for an occupancy permit. (*See* R. 85-1, Def. West Chicago's L.R. 56.1(a)(3) Statement, Ex. O.)

## ANALYSIS

### I. COUNT I -- PLAINTIFFS' EQUAL PROTECTION CLAIM

In order to prevail on their equal protection claim, Plaintiffs must demonstrate that they have been "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Cruz v. Town of Cicero*, 275 F.3d 579, 587 (7th Cir. 2001). *See also Hilton v. City of Wheeling*, 209 F.3d 1005, 1008 (7th Cir. 2000) (plaintiff "must present evidence that the defendant deliberately sought to deprive him of the equal protection of the laws for reasons of a personal nature unrelated to the duties of the defendant's position."). West Chicago submits that summary judgment is appropriate on Plaintiffs' equal protection claim because Plaintiffs cannot provide evidence that West Chicago (1) treated differently others similarly situated, or (2) lacked a rational basis or was motivated by an illegitimate animus for denying an occupancy permit for the subject property.

#### A. Unequal Treatment for Others Similarly Situated

Because the burden is on Plaintiffs to demonstrate unequal treatment, they must point to some evidence that they were treated differently than others who are "*prima facie* identical in all relevant respects" in order to withstand summary judgment. *Purze v. Village of Winthrop Harbor*, 286 F.3d 452, 455 (7th Cir. 2002). *See also Ind. State Teachers Ass'n v. Bd. of Sch. Comm'rs*, 101 F.3d 1179, 1181-82 (7th Cir. 1996). In this case, evidence of different treatment for others similarly situated would mean evidence of others who did not comply with the West Chicago zoning requirements at issue yet received occupancy permits anyway.

As an initial matter, the Court notes that any evidence of unequal treatment should have been documented in a statement of facts that require the denial of summary judgment, as

8

mandated by Local Rule 56.1(b)(3)(B). Plaintiffs, however, filed no such statement. This failure alone constitutes sufficient grounds for granting West Chicago's motion for summary judgment. *See, e.g., Bradley v. Work*, 154 F.3d 704, 708 (7th Cir. 1998) (upholding lower court's decision to grant the defendants' motion for summary judgment in part because of the plaintiffs' failure to comply with Local Rule 56.1); *see also Midwest Imports, Ltd. v. Coval*, 71 F.3d 1311, 1316-17 (7th Cir. 1995) (the Seventh Circuit has "consistently and repeatedly required strict compliance" with the local rules concerning summary judgment motions, including the requirement that a separate statement of additional facts be filed.).

Even considering Plaintiffs' evidence on the merits, however, it is clear that they have not discharged their burden. Indeed, the only evidence Plaintiffs supply in attempting to show that West Chicago treated differently others who were similarly situated is the affidavit of Mrs. Moberg. (*See* R. 100-1, Pls.' Resp. to Ind. Defs.' Mot. for Summ. J., Ex. B.) Mrs. Moberg's affidavit, however, does not point to any examples of unequal treatment with respect to the wetlands or paving issues. Further, although her affidavit does purport to show that West Chicago treated others more favorably with respect to outside storage, the evidence from her affidavit is lacking on that issue as well. Mrs. Moberg asserts that she has "witnessed" outside storage at various addresses that apparently lack special use permits. (*Id.* at Ex. B, ¶ 14.) Mrs. Moberg's affidavit, however, does not explain how or why these other properties are "*prima facie* identical in all relevant respects" and can therefore serve as a baseline for establishing unequal treatment.

In *Purze v. Village of Winthrop Harbor*, the Seventh Circuit upheld summary judgment for the Village of Winthrop Harbor in an equal protection case arising out of the Village's refusal

to approve several preliminary plats of a subdivision plan where the plaintiffs failed to prove unequal treatment of others similarly situated. 286 F.3d at 455. In that case, the plaintiffs relied on comparisons with three other developments to support their claims that others were treated more favorably. The Seventh Circuit agreed that these other developments were not sufficiently similar because these other developments had requested different variances, submitted plat requests at different time periods, and were reviewed by different Boards. *Id.* Without these three other developments, the plaintiffs in *Purze* lacked any evidence of unequal treatment, and accordingly, the Seventh Circuit affirmed summary judgment in favor of the Village. *Id. See also Indiana State Teachers Ass'n*, 101 F.3d at 1182 ("[W]hen as in the present case the government is treating *unequally* two persons that are prima facie unequal in a rationally relevant respect . . . the equal protection clause is inapplicable because the plaintiff is asking for a revision of policy rather than for a restoration of equality.") (emphasis in original).

Similarly, in this case, Plaintiffs' failure to demonstrate that others similarly situated were treated differently by West Chicago dooms their equal protection claim.

### B. Lack of Rational Basis or Illegitimate Animus

The burden is likewise on Plaintiffs to point to some evidence that West Chicago's conduct had no rational basis or was motivated by some illegitimate purpose. *See Northwestern University v. City of Evanston*, No. 00 C 7309, 2002 WL 31027981, at *4 (N.D. Ill. Sept. 11, 2002) (citing *Nevel v. Village of Schaumburg*, 297 F.3d 673, 681 (7th Cir. 2002)). If the plaintiff attempts to show that the defendant acted with an illegitimate purpose, he or she must demonstrate that ill will was the sole cause of the complained-of action. *Olech v. Village of Willowbrook*, 160 F.3d 386, 388 (7th Cir. 1998). If the "defendant would have taken the

10

complained-of action anyway, even if it didn't have the animus, the animus would not condemn the action." *Id.*

Here, Plaintiffs have failed to supply any evidence that West Chicago's actions lacked any rational basis or were motivated by animus or ill will towards Plaintiffs. Plaintiffs claim that they have "raised a fair question whether they were treated differently and whether Defendants harbored a [sic] illegitimate animus towards Plaintiffs." (*See* R. 97-1, Pls.' Resp. to West Chicago's Mot. for Summ. J., p. 4.) Further, Plaintiffs argue that the Defendants "have repeatedly and knowingly abused their power," (*id.*), and that the Defendants have "acted intentionally and maliciously." (*Id.*) Plaintiffs, however, do not cite any evidence in support of their heated rhetoric.[4]

In addition, contrary to Plaintiffs' suggestion, West Chicago has demonstrated that legitimate reasons existed for the denial of an occupancy permit for the subject property. Plaintiffs argue that West Chicago refused an occupancy permit for the subject property solely because of the wetlands issue, and they contend that this "has no connection to occupancy." (*See* R. 97-1, Pls.' Resp. to West Chicago's Mot. for Summ. J., p. 4.) Plaintiffs admit, however, that issuance of an occupancy permit is conditional on compliance with the requirements of the zoning ordinance, which incorporates by reference the Stormwater and Floodplain ordinance. (*See* R. 98-1, Pls.' L.R. 56.1(b)(3) Resp. to Ind. Defs., ¶ 29; R. 84-1, Ind. Defs.' L.R. 56.1(a)(3) Statement, Ex. B at p. 23.) Further, Defendants have supplied evidence in the form of testimony

---

[4] Again, if they had such evidence, Plaintiffs should have documented it in a Local Rule 56.1(b)(3)(B) statement. Plaintiffs' failure to file a Local Rule 56.1(b)(3)(B) statement in connection with their opposition to West Chicago's motion for summary judgment is itself grounds for granting that motion. *See* Section I.A., *infra*.

11

by West Chicago and DuPage County employees that West Chicago will not approve permit applications that impact wetlands issues without forwarding those applications to the County for review and approval. (*See* R. 84-1, Ind. Defs.' L.R. 56.1(a)(3) Statement, Ex. B at pp. 10-11, 38-39, 72. *See also* R. 99-1, Pls.' L.R. 56.1(b)(3) Resp. to West Chicago, ¶¶ 69, 73, 75.) Plaintiffs argue that the wetlands issue "has no connection to occupancy," but they supply no evidence to back up their claim.

Moreover, Defendants have pointed to unrefuted evidence establishing that other reasons existed for the denial of an occupancy permit. (*See, e.g.*, R. 84-1, Ind. Defs.' L.R. 56.1(a)(3) Statement, Ex. J (occupancy permit denied on Feb. 28, 2000 because of, among other things, the requirement that driveways and parking spots be paved and the need for a special use permit to cover outside storage); *Id.*, Ex. K (occupancy permit denied on March 8, 2000 because of, among other things, the requirement that driveways and parking spots be paved); R. 85-1, Def. West Chicago's L.R. 56.1(a)(3) Statement, Ex. O (occupancy permit denied on Feb. 11, 2002 because of, among other things, the requirement that driveways and parking spots be paved and the need for a special use permit to cover outside storage.)

In *Albiero v. City of Kankakee*, the Seventh Circuit affirmed summary judgment for the City of Kankakee in an equal protection case where the plaintiff failed to supply evidence to support his claim that Kankakee sought retaliation against him. 246 F.3d 927, 933-34 (7th Cir. 2001). The plaintiff in that case claimed that Kankakee had posted a sign declaring that his building was "slum property" to retaliate for litigation that he had filed against the City. *Id.* at 931. The district court granted Kankakee's motion for summary judgment, in part because it found that the plaintiff failed to show "that the City's actions were 'a spiteful effort to "get" him

in retaliation for the prior litigation between the parties and was wholly unrelated to any legitimate state objective.'" *Id.* at 932. The Seventh Circuit affirmed, noting that there was "no concrete evidence that the City picked on Mr. Albiero 'out of sheer vindictiveness'" and that the plaintiff's claims of illegitimate animus amounted to "pure speculation." *Id.* at 933 (citation omitted). *See also Vetter v. Village of Oak Lawn*, No. 01 C 8278, 2002 WL 1989441, at *5 (N.D. Ill. Aug. 26, 2002) (granting summary judgment for the defendant because "[o]ther than his belief that he was assigned to the front desk in order to punish and humiliate him, Plaintiff has not presented any evidence that would suggest that Defendants acted out of vindictiveness or spite to 'get' him.").

In sum, even if Plaintiffs had demonstrated that others similarly situated were treated differently -- and they have not done so -- Plaintiffs' equal protection claim would fail because they have supplied no evidence that West Chicago's denial of an occupancy permit was irrational or motivated by any illegitimate animus.

## II. COUNT II -- PLAINTIFFS' SECTION 1983 CLAIM

In Count II, Plaintiffs assert that Defendants have violated Plaintiffs' constitutional rights, and they seek damages under Section 1983. Defendants argue that Plaintiffs' Section 1983 claim is essentially derivative of their equal protection claim, and Defendants suggest that if the equal protection claim fails, Plaintiffs' Section 1983 claim must also fail. (*See* R. 102-1, Ind. Defs.' Reply in Support of Mot. for Summ. J., p. 4.) Defendants overlook, however, an additional violation of their constitutional rights alleged by Plaintiffs. Specifically, Plaintiffs also allege that West Chicago deprived Plaintiffs of their "inalienable right to use their property." (*See* R. 68-1, Third Am. Compl., ¶ 63.) Essentially, Plaintiffs claim that, by refusing to issue an

13

occupancy permit for the subject property, West Chicago deprived Plaintiffs of their lawful right to use the property.

In order to prevail on their Section 1983 claim under this right to property theory, Plaintiffs must establish that they have a legitimate claim of entitlement to an occupancy permit for the subject property. *See Bayview- Lofberg's, Inc. v. City of Milwaukee*, 905 F.2d 142, 144 (7th Cir. 1990); *Carson v. Block*, 790 F.2d 562, 566-67 (7th Cir. 1986). *See also River Park, Inc. v. City of Highland Park*, No. 93 C 1179, 1993 WL 281079, at *4 (N.D. Ill. July 26, 1993 ("A property interest or right must be a legitimate claim of entitlement and not a mere expectancy."). Municipal zoning ordinances governing permits create such an entitlement only if the requirements of the zoning ordinance, if satisfied, would dictate the granting of the requested amendment or permit. *See New Burnham Prairie Homes, Inc. v. Village of Burnham*, 910 F.2d 1474, 1480-81 (7th Cir. 1990); *Bayview-Lofberg's*, 905 F.2d at 145.

As discussed above, however, Plaintiffs have not supplied evidence to support their claim that they were "entitled" to an occupancy permit for the subject property under West Chicago's zoning ordinance. To the contrary, West Chicago has demonstrated that there were legitimate reasons for the denial of an occupancy permit for the subject property, including the wetlands issue, the requirement that driveways and parking spots be paved, and the need for a special use permit to cover outside storage. (*See, e.g.*, R. 84-1, Ind. Defs.' L.R. 56.1(a)(3) Statement, Ex. J; *Id.*, Ex. K; R. 85-1, Def. West Chicago's L.R. 56.1(a)(3) Statement, Ex. O.)

Plaintiffs' failure to provide evidence to show that they were entitled to an occupancy permit dooms their Section 1983 claim under right to property theory.

## III. COUNT III -- PLAINTIFFS' *MONELL* CLAIM

In Count III, Plaintiffs assert that Defendants have violated Plaintiffs' constitutional rights under *Monell v. Dep't of Social Services*, 436 U.S. 658, 98 S.Ct. 2018 (1978). In order to prevail on a *Monell* claim under *Monell*, Plaintiffs must prove: (1) unconstitutional conduct perpetrated by a municipal employee, *Thompson v. Boggs*, 33 F.3d 847, 859 (7th Cir. 1998); (2) the unconstitutional conduct was the result of a municipal policy, *Pembaur v. Cincinnati*, 475 U.S. 469, 479-80, 106 S.Ct. 1292, 1298 (1986); and (3) a causal link between the unconstitutional action and the plaintiff's injury. *Monell*, 436 U.S. at 694, 98 S.Ct. at 2037-38.

Plaintiffs suggest that West Chicago's summary judgment motion does not attack Count III and that, even if the other counts fail, the *Monell* claim still stands. (*See* R. 97-1, Pls.' Resp. to West Chicago's Mot. for Summ. J., p. 9.) West Chicago disputes this, arguing that the summary judgment motion attacks the claimed constitutional rights violation that serves as the basis for Plaintiffs' *Monell* claim and that if this Court grants summary judgment on Plaintiffs' other claims, the *Monell* claim must also fail. (*See* R. 103-1, West Chicago's Reply in Support of Mot. for Summ. J., p. 9.)

West Chicago is correct that the essential bedrock of any *Monell* claim is a violation of the plaintiff's constitutional rights and that absent any such violation there can be no *Monell* claim. *See, e.g., Wright v. Board of County Comm'rs of Cook County, Ill.*, No. 99 C 1998, 1999 WL 1249313, at *4 (N.D. Ill. Dec. 17, 1999) (dismissing *Monell* claim because plaintiff did not claim "a deprivation of any constitutional rights."). In this case, Plaintiffs' *Monell* count is premised on their claim that West Chicago deprive them of the equal protection of the laws and deprived them of right to use their property. Plaintiffs allege no other deprivation of

15

constitutional rights. Therefore, because Plaintiffs' equal protection and right to property claims fail, as discussed above, Plaintiffs' *Monell* claim also fails.

## IV. COUNT IV -- PLAINTIFFS' WILLFUL AND WANTON CONDUCT CLAIM

The Individual Defendants have moved for summary judgment on the only claim that applies to them -- Plaintiffs' willful and wanton conduct claim.[5] Plaintiffs allege in Count IV that the Individual Defendants "willfully and knowingly imposed requirements upon the Plaintiffs which has [sic] no basis in law or fact and were imposed upon no other similarly situated persons." (*See* R. 68-1, Third Am. Compl., ¶ 87.) Plaintiffs claim that the Individual Defendants improperly determined that the West Chicago property was a wetland or "buffer zone" and contained illegal fill and that the Individual Defendants failed to issue them an occupancy permit. (*Id.* ¶¶ 88-92, 97.) Plaintiffs allege that the Individual Defendants' actions were "knowing, willful and in reckless disregard of the Plaintiffs' rights." (*Id.* ¶ 113.)

Previously, the Individual Defendants urged this Court to dismiss Plaintiffs' claim for willful and wanton conduct, arguing that Count Four is barred by certain provisions of the Illinois Local Governmental and Governmental Employees Tort Immunity Act, 745 ILCS 10/1-101, *et seq.* (West 1998) (the "Illinois Tort Immunity Act"). Specifically, the Individual Defendants argued that they are immune to claims for alleged willful and wanton conduct under Sections 2-104[6] and 2-206[7] of the Illinois Tort Immunity Act.

---

[5] Plaintiffs make clear in their response that "the Individual Defendants are only named in Count IV of the Third Amended Complaint." (*See* R. 100-1, Pls.' Resp. to Ind. Defs.' Mot for Summ. J., p. 1.) Inexplicably, however, the Individual Defendants' motion also seeks summary judgment on other claims directed solely toward West Chicago.

[6] Section 2-104 provides: "A local public entity is not liable for an injury caused by the issuance, denial, suspension or revocation of, or by the failure or refusal to issue, deny, suspend

16

As this Court noted in its December 17, 2002 Order, the Individual Defendants are correct that Sections 2-104 and 2-206 do provide immunity for the alleged willful and wanton conduct of a public employee in connection with the issuance or denial of a permit. *See Village of Bloomingdale v. CDG Enterprises, Inc.*, 196 Ill.2d 484, 496, 752 N.E.2d 1090, 1099 (Ill. 2001) (Section 2-104 "contains no reference to intent whatsoever and, again, it certainly does not contain an exception for 'willful and wanton misconduct' or 'corrupt or malicious motives'"); *see also In re Chicago Flood Litigation*, 176 Ill.2d 179, 196, 680 N.E.2d 265, 273 (Ill. 1997) (City of Chicago immune for willful and wanton conduct under Section 2-201 because that section did not contain an exception to immunity for alleged willful and wanton conduct).

Nonetheless, this Court declined to dismiss Plaintiffs' willful and wanton conduct claim for two reasons. First, the Court found that the Individual Defendants waived their argument based on the Illinois Tort Immunity Act because they did not raise that argument until the reconsideration stage. *See Moberg v. City of West Chicago*, No. 00 C 2504, 2002 WL 31834872, at *2 (N.D. Ill. Dec. 17, 2002) (citing *In re Brand Name Prescription Drugs Antitrust Litigation*, No. 94 C 897, 2001 WL 293135, at *2 (N.D. Ill. Mar. 23, 2001) ("reconsideration will not be granted to allow the losing party to present new legal arguments or facts which the party could have presented during the pendency of the underlying motion")). Second, the Court concluded

---

or revoke, any permit license, certificate, approval, order or similar authorization where the entity or its employee is authorized by enactment to determine whether or not such authorization should be issued, denied, suspended or revoked." 745 ILCS 10/2-104.

[7] Section 2-206 provides: "A public employee is not liable for an injury caused by the issuance, denial, suspension or revocation of, or by the failure or refusal to issue, deny, suspend or revoke, any permit license, certificate, approval, order or similar authorization where the entity or its employee is authorized by enactment to determine whether or not such authorization should be issued, denied, suspended or revoked." 745 ILCS 10/2-206.

that Plaintiffs' allegations, viewed in the light most favorable to them, might go beyond the mere denial of a permit and, therefore, could conceivably extend beyond the immunity afforded by Sections 2-104 and 2-206. *Id.* (citing *Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999) (dismissal is appropriate "only if it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'")).

Now, the Individual Defendants have moved for summary judgment on Plaintiffs' willful and wanton conduct claim, again arguing that the Illinois Tort Immunity Act applies. The Individual Defendants maintain that Sections 2-104 and 2-206 bar this claim because Plaintiffs cannot demonstrate that this case involves anything more than the simple denial of occupancy and special use permits. (*See* R. 83-1, Defs.' Mem. in Support of Mot. for Summ. J. at 13.)

Although Plaintiffs dispute the Individual Defendants' characterization of their claims, they do not point to any evidence of alleged misconduct by the Individual Defendants beyond the permits issue. Plaintiffs suggest that the Individual Defendants failed to investigate claims that West Chicago was itself the source of the illegal fill on the property, and Plaintiffs assert that the Individual Defendants' actions cost them a prospective tenant or buyer. (*See* R. 100-1, Pls.' Resp. to Ind. Defs.' Mot for Summ. J. at 5.) But these complaints relate to the denial of the permits -- the former is in essence a complaint about the quality of West Chicago's due diligence in processing the permit applications and the latter is a complaint about the damages caused by the denial of the permits. Thus, Plaintiffs have failed to show that their claims against the Individual Defendants go beyond the mere denial of permits.

Because Plaintiffs have failed to supply any evidence that their complaints against the Individual Defendants go beyond the mere denial of permits, Plaintiffs' willful and wanton conduct claim fails because it is barred by Sections 2-104 and 2-206. *See Monat v. County of Cook*, 322 Ill.App.3d 499, 512, 750 N.E.2d 260, 272 (Ill. App. 2001) (the Illinois Tort Immunity Act "expressly precludes damage awards for the failure to award a building permit, or the revocation of a permit already issued."); *PBM Stone, Inc. v. Palzer*, 251 Ill.App.3d 390, 397, 622 N.E.2d 71, 76 (Ill. App. 1993) (Sections 2-104 and 2-206 "provide that both local public entities and public employees are immune from liability regarding the issuance, denial, suspension, or revocation of any license or permit.").

## CONCLUSION

Defendant West Chicago's motion for summary judgment (R. 85-1) and the Individual Defendants' motion for summary judgment (R. 81-1) are both granted.

DATED: February 3, 2003                          ENTERED

AMY J. ST. EVE
United States District Court Judge